NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000805
29-NOV-2013
11:09 AM

NO. CAAP-11-0000805

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF K CHILDREN

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-NOS. 10-0050; 10-0051; 10-0052; and 10-0053)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, and Foley and Fujise, JJ.)

In this Child Protective Act case, Father-Appellant
(Father) appeals from the "Order RE: Chapter 587A, H.R.S., as
Amended," (Custody Order) entered by the Family Court of the
Third Circuit (Family Court).[1] The Custody Order awarded the
Department of Human Services (DHS) foster custody over Father's
three biological children, DK, TK, and KK (collectively,
"Children"), finding that "[c]ontinuation in the family home
would be contrary to the immediate welfare and best interests of
the children[.]" In a separate order, not subject to this
appeal, the Family Court ordered the continued foster custody of
Father's three older step-children, RF, JF, and JA (collectively,
"Step-Children"). Children and Step-Children were removed from
Father's custody after the DHS learned of allegations by RF that
Father had been sexually abusing her.

---

[1] The Honorable Lloyd Van De Car presided.

On appeal, Father argues that the Family Court erred in: (1) denying his request to produce RF to testify at the custody hearing; and (2) relying on Father's refusal to comply with its order that he undergo a psychosexual evaluation in awarding foster custody over Children to the DHS. We affirm.

I.

A.

The DHS was contacted after officials at RF's school learned that RF had disclosed to a friend that Father had been sexually abusing her. RF's mother had left the family home several years earlier after alleged physical abuse inflicted by Father and Father's mother. When initially questioned by school officials and a police detective, RF denied the alleged sexual abuse. However, short time later, RF reported that she had been pressured by Father's mother and the girlfriend (Girlfriend) of Father's brother (Brother 1) to deny being abused, and RF asked for another interview. Brother 1 and Girlfriend lived in the same dwelling unit as Father.

The subsequent interview was conducted by a DHS social worker. At this interview, RF reported that Father began sexually abusing her about a month after her mother moved from the family home, when RF was eleven years old. Father would come into RF's bedroom and touch her vaginal area over her clothes, and later, he began touching RF under her clothing. Within two months, the abuse progressed to sexual intercourse and continued for years, with the last incident occurring a couple months before RF was removed from Father's custody. A year before RF was removed, she had informed Girlfriend and Father's mother about the abuse, but the abuse continued.

About a month after RF was removed from Father's custody, Brother 1 boarded a bus RF was taking to school. Brother 1 told RF that she was the only one who could "fix all of this" and bring the family back together. They got off the bus and met with Girlfriend, who told RF that Father would go to jail for 25 years and that Girlfriend and Father's mother would also

2

go to jail because they knew about the abuse and did nothing about it. RF also reported being hit, choked, and slammed against a wall while living in Father's household.

JA, one of the Step-Children, reported that he had been sexually abused by another of Father's brothers (Brother 2). JA reported the abuse to adult members of Father's family, but they told him not to say anything to anyone else. When JA told Girlfriend about the abuse, she slammed him against a wall. Children reported that they had received "dirty lickings" from adults other than Father in the family. Two of the Children also engaged in sexualized behaviors while in foster custody.

Father denied sexually abusing RF. Girlfriend denied that RF disclosed any sexual abuse to her, and Girlfriend denied that she has physically abused Step-Children or Children.

B.

Prior to the custody hearing, the Family Court ordered Father to undergo a psychosexual evaluation. The Family Court also ordered that the protections of Hawaii Revised Statutes (HRS) § 578A-20 (Supp. 2012) would apply.[2] Under these protections, evidence from the psychosexual evaluation would be inadmissible in any state criminal or civil action or proceeding. Nevertheless, Father refused to undergo a psychosexual evaluation.

Father filed a motion requesting that the Family Court order the DHS to produce the Step-Children, including RF, to testify in court, and to produce Children for an in camera interview by the Family Court in chambers. The Family Court denied Father's motion to produce the Step-Children and Children. As to RF, the Family Court found that RF was afraid of Father and

_____

[2] HRS § 587A-20 provides:

> The court may order that testimony or other evidence produced by a party in a proceeding under this chapter shall be inadmissible as evidence in any other state civil or criminal action or proceeding if the court deems such an order to be in the best interests of the child.

his family. The Family Court also found that RF had been diagnosed with Post-Traumatic Stress Disorder and suffers from panic attacks. RF's Guardian Ad Litem did not believe it would be in RF's best interest to testify. RF's therapist also opined that testifying at the hearing would be very stressful for RF.

Father at one time indicated that he wanted to hire an expert to interview RF, but failed to do so. Video recordings were made of the forensic interviews of Step-Children conducted at the Children's Justice Center. At the custody hearing, Father did not object to the admission of the video recordings of the interviews, and he requested the introduction of the video recordings of RF's interviews, which were admitted into evidence. Father also conducted a direct examination of the police detective who interviewed RF, but did not attempt to call the DHS social worker who interviewed RF.

Based on the evidence presented at the hearing, the Family Court found that RF was sexually abused by Father; that JA was sexually abused by Brother 2; that Children and Step-Children were physically abused by Girlfriend and Father's father; and that Father, Brother 2, and Girlfriend all remained in Father's family home.

The Court concluded that on account of the physical abuse suffered by Children and

> the presence of two (2) identified and untreated sex
> offenders in [Father's family] home, and on account of the
> demonstrated unwillingness of other adult members of
> [Father's family] home to act to protect the children from
> harm when informed of the sex abuse, the Court concludes
> that [Children] have been harmed, are subject to imminent
> threatened harm, and that the home is unsafe for [Children]
> even with a service plan.

The Family Court further concluded that "[i]t is not in [Chidren's] best interests to return to [Father's] family home unless and until the perpetrators of abuse in that home acknowledge the abuse they have committed and address this abuse adequately through services."

4

The Family Court issued the Custody Order on October 20, 2011, and its "Amended Findings of Fact and Conclusions of Law" on December 13, 2011.[3/]

II.

We resolve the issues raised by Father on appeal as follows.

A.

At the outset, we note that the DHS contends that this appeal is moot because after Father filed his appeal, he was convicted of sexual abuse perpetrated on RF, sentenced, and is currently incarcerated. The DHS cites to portions of the record which show that Father was sentenced to incarceration for 20 years. The DHS argues that in light of his conviction, Father cannot provide a safe family home to Children. However, it appears that Father's appeal of his conviction has not been resolved, and we therefore decline to resolve this appeal on mootness grounds.

B.

Father contends that the Family Court erred in denying his request to produce RF to testify at the custody hearing. We disagree.

Parents have a substantive liberty interest in the care, custody, and control of their children that is protected by the due process clause of Article I, Section 5 of the Hawai'i Constitution. In re Doe, 99 Hawai'i 522, 533, 57 P.3d 447, 458 (2002). In determining whether limitations on a child testifying violates a parent's due process rights, the Family Court must balance competing interests, including the interest of the parent at stake, the parent's need for the child's testimony, and the best interests of the child. See In re Doe Children, 85 Hawai'i 119, 123, 938 P.2d 178, 182 (App. 1997); HRS § 587A-21(d) (Supp.

---

[3/] We note that this appeal was significantly delayed by the failure of Father's original appellate counsel to pursue Father's appeal and file Father's opening brief, which necessitated the appointment of new appellate counsel.

2012). In general, "when the rights of parents and the welfare of their children are in conflict, the welfare of the minor children must prevail." In re Doe Children, 85 Hawaiʻi at 125, 938 P.2d at 184 (citation omitted; format altered).

HRS § 587A-21(d) provides:

> A child may be directed by the court to testify under circumstances deemed by the court to be in the best interests of the child and the furtherance of justice. These circumstances may include an on-the-record interview of the child in chambers, with only those parties present during the interview as the court deems to be in the best interests of the child.

Unlike Father's motion regarding Children, which requested an in camera chambers interview, Father's motion regarding RF requested that she be produced to testify in court. The record does not indicate the Father was interested in examining RF under conditions more restrictive and less intimidating than examining and confronting RF in court. We therefore limit our review to whether the Family Court erred in denying Father's request to confront and examine RF in court.

We conclude that the Family Court did not err in denying Father's motion to produce RF to testify in court. Father does not challenge the Family Court's findings that RF was afraid of Father and his family; that she had been diagnosed with Post-Traumatic Stress Disorder and suffers from panic attacks; that RF's guardian ad litem believed that requiring RF to testify would not be in RF's best interests; and that RF's therapist believed it would be very stressful for RF to testify at the hearing. Father was permitted to offer RF's video-recorded interviews into evidence, including the police interview in which she denied being sexually abused by Father, and Father had the opportunity to call and examine the people who conducted the interviews. In addition, Father's criminal case for sexually abusing RF was still pending at the time of the custody hearing. Under these circumstances, we conclude that the Family Court did not err in determining that what might be gained by RF's testimony in court was outweighed by the harm to her.

C.

We reject Father's claim that the Family Court erred in relying on Father's refusal to comply with its order that he undergo a psychosexual evaluation in awarding foster custody over Children to the DHS. Father contends that he was justified in refusing to undergo a psychosexual evaluation because of his concern that it would require him to take a polygraph examination and his concern regarding self-incrimination. Father concedes, however, that there was no direct evidence that the court-ordered psychosexual evaluation necessarily included polygraph tests. In addition, the Family Court ordered that the protections provided by HRS § 587A-20 would apply to Father's psychosexual evaluation. This meant that any evidence resulting from the evaluation would not be admissible in Father's criminal prosecution. See HRS § 587A-20. Under these circumstances, Father's refusal to undergo a psychosexual evaluation was not justified and the Family Court did not err in relying on Father's refusal in rendering its custody decision.

III.

We affirm the Family Court's Custody Order.

DATED: Honolulu, Hawai'i, November 29, 2013.

On the briefs:

Mirtha Oliveros
(Oliveros Law, LLLC)
for Appellant

Audrey L. Whitehurst
Mary Anne Magnier
Deputy Attorneys General
for Appellee

*Craig H. Nakamura*

Chief Judge

*Daniel R. Foley*

Associate Judge

Associate Judge

7